# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01671-SCT

*NINA PRICE, INDIVIDUALLY AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF ALBERT B. PRICE, JR., DECEASED*

*v.*

*STEVEN CLARK, M.D., SAMUEL DUFF AUSTIN, M.D., BENNIE BARNETTE WRIGHT, JR., M.D., ESTATE OF BARRY STEPHEN SULLIVAN, M.D., CLEVELAND MEDICAL ALLIANCE, LLP, CLEVELAND MEDICAL CLINIC, PLLC, CLEVELAND MEDICAL CLINIC, LTD AND CLEVELAND CLINIC, P.A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/2007 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER MORGAN POSEY |
| | EDWARD A. WILLIAMSON |
| | JOHNNIE E. WALLS, JR. |
| ATTORNEYS FOR APPELLEES: | JAMES LAWRENCE WILSON, IV |
| | TOMMIE G. WILLIAMS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ON CROSS-APPEAL: AFFIRMED - 07/23/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This appeal involves various issues arising from medical-negligence/wrongful-death litigation against various medical providers under both the Mississippi Tort Claims Act and the medical-malpractice statute. We affirm in part and reverse in part the final judgment of dismissal entered by the Circuit Court for the Second Judicial District of Bolivar County, Judge Charles E. Webster presiding.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Albert Price, Jr., Nina Price's ("Price") husband, was diagnosed with a pituitary tumor on April 9, 2004, just four months prior to his death on August 14, 2004. Upon the death of her husband, Nina Price commenced this litigation via a duly-filed complaint alleging that her husband's primary-care physician, Dr. Steven Clark, had proximately caused her husband's injuries and wrongful death due to his negligent failure to timely diagnose the pituitary tumor. Pursuant to a theory of respondeat superior, Price also named as defendants in her original complaint Dr. Clark's employers: Cleveland Medical Clinic, PLLC; Cleveland Medical Alliance, LLP ("Alliance"); and Providence Healthcare d/b/a Bolivar Medical Center ("Bolivar Medical Center").[1] Price further alleged that her husband's neurologist, Dr. Ravi Pande, of Greenwood Neurology Clinic, was negligent in failing to diagnose the tumor, which proximately caused injuries to Mr. and Mrs. Price and the wrongful death of Mr. Price.

---

[1]It was later determined that Providence Healthcare was improperly identified, and that the proper name of the corporate entity that owned Bolivar Medical Center was PHC-Cleveland, Inc.

¶3.     Mr. Price had various health problems, receiving primary care from 1980 until the time of his death in 2004 at what he believed to be the same medical clinic. However, this clinic actually was a series of successive partnerships housed in the same facility. Alliance was a limited-liability partnership formed on May 30, 1997, by the Board of Trustees for Greenwood Leflore Hospital and physicians Charles F. Brock, M.D.; Benny B. Wright, Jr., M.D.; Samuel D. Austin, M.D.; and Barry S. Sullivan, M.D. Dr. Clark was an employee of Alliance from December 20, 1999, through September 30, 2003. However, Price maintains that at the time she filed the suit, she was unaware of any affiliation between Alliance and Greenwood Leflore Hospital. Cleveland Medical Clinic, PLLC, was the successor clinic organized and operated between October 1, 2003, and January 31, 2004, by physicians Charles F. Brock, Jr., M.D.; James E. Warrington, Jr., M.D.; Benny B. Wright, Jr., M.D.; and Steven Clark, M.D. After February 1, 2004, Cleveland Medical Clinic became an affiliated entity of Delta Regional Medical Center. Bolivar Medical Center, formerly known as Bolivar County Hospital, was the local hospital where Mr. Price received medical care.

¶4.     The following is a procedural timeline of this case:

August 30, 2004     Price mailed notice-of-claim letters, as required by Mississippi Code Section 15-1-36(15), to the following defendants: Dr. Steven Clark, individually; Dr. Clark on behalf of Alliance; National Registered Agents on behalf of Bolivar Medical; Gerald Jacks, a registered agent of Cleveland Medical Clinic.

3

August 31, 2004    Price filed a complaint[2] against Dr. Steven Clark, Alliance, Bolivar Medical, Cleveland Medical Clinic, Dr. Ravi Pande, and John Does 1-5. The basis of the complaint was negligence and gross negligence in failing to treat and diagnose the pituitary tumor. That same day, Price mailed Dr. Pande a notice-of-claim letter.

December 7, 2004    The defendants were personally served with process. Dr. Clark was served individually and on behalf of Alliance, because Price mistakenly believed him to be a former partner of the now-dissolved limited-liability partnership.

January 4, 2005    Dr. Pande filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted based on Dr. Pande's alleged protected status under the MTCA as a employee of Greenwood Neurology Clinic, which was owned and operated by a public hospital, Greenwood Leflore Hospital. Dr. Pande later was dismissed from the suit by Agreed Order of Dismissal Without Prejudice filed on February 2, 2006.

February 3, 2005    Price sent notice-of-claim letters to additional defendants pursuant to the MTCA. Price sent these letters to Delta Regional Medical Center (L. Ray Humphreys, CEO) due to its affiliation with Cleveland Medical Clinic and to Greenwood Leflore Hospital (Jerry Adams, Executive Director) due to its affiliation with Alliance and Greenwood Neurology Clinic.

---

[2]Price actually filed two complaints on August 31, 2004. The second complaint was filed in the same cause number and added one additional defendant, Dr. Ravi Pande. The record reveals that the second complaint was intended as a substitute for the first complaint. Both complaints will be referred to collectively as the "original complaint."

4

| | |
|---|---|
| June 27, 2005 | Without leave from the trial court, Price filed an "Amended Complaint" adding defendants Greenwood Leflore Hospital and Delta Regional Medical Center. The amended complaint retained all the previously named defendants, but renamed Cleveland Medical Clinic as "Cleveland Medical Clinic, PLLC." The underlying basis of the complaint remained the same – negligence and gross negligence. Dr. Clark, Alliance, and Cleveland Medical Clinic, PLLC, were not served with a copy of the amended complaint. Greenwood Leflore Hospital eventually was dismissed by Agreed Order of Dismissal Without Prejudice filed on February 2, 2006. Delta Regional was dismissed from the suit by Agreed Order of Dismissal entered on March 13, 2006. |
| November 2, 2005 | Price filed a "Second Amended Complaint" that retained the previously named defendants and underlying basis for the complaint, but added PHC-Cleveland, Inc. d/b/a Bolivar Medical Center. PHC-Cleveland, Inc. d/b/a Bolivar Medical Center was incorrectly identified in the original complaint as "Province Healthcare Company."Also on this day, summonses were issued for service on Delta Regional Medical Center, Greenwood Leflore Hospital, and PHC-Cleveland, Inc., by way of CT Corporation Service in Lakeland, Florida. |
| December 27, 2005 | Defendants, Dr. Steven Clark, Cleveland Medical Clinic, and Alliance filed their Answers, First Defenses, and Motions to Dismiss, raising the defenses of failure to timely file notice of claim pursuant to Mississippi Code Section 15-1-36; the failure of plaintiff to attach to the second amended complaint a certificate executed by the plaintiff's attorney as required by Mississippi Code Section 11-1-58; the failure to provide proper notice of claim under the MTCA; as well as all applicable Rule 12 defenses under the Mississippi Rules of Civil Procedure and other relevant defenses. Following a response from Price, the defendants filed a Rebuttal in Support of Motions to Dismiss and Notice of Conversion to Motion for Summary Judgment. |
| February 21, 2006 | An Agreed Order of Dismissal was entered for PHC-Cleveland, Inc. (incorrectly named in the Complaint as Province Healthcare Company d/b/a Bolivar Medical Center). |
| April 20, 2006 | Price issued new notice-of-claim letters to Drs. Steven Clark, Barry Sullivan, Samuel D. Austin, Bennie B. Wright, Jr., and Charles F. Brock and Cleveland Medical Clinic c/o Drs. Brock, Austin, Wright, and Sullivan. |

| | |
|---|---|
| April 27, 2006 | Price filed a Motion for Voluntary Dismissal Without Prejudice as to defendants Dr. Steven Clark, Alliance, and Cleveland Medical Clinic. On May 8, 2006, Price filed a Motion to Substitute Parties by Filing Amended Complaint to enable her to substitute named defendants for John Does 1-5 in the original complaint. By the end of May, a hearing was set for June 23, 2006, before Circuit Judge Charles Webster in Clarksdale, Coahoma County, Mississippi. |
| July 24, 2006 | Price's motion to amend complaint was granted. An Order Granting Partial Summary Judgment was entered by the trial judge and filed on July 24, 2006, dismissing, with prejudice, all defendants subject to the MTCA. |
| July 26, 2006 | Price filed a third amended complaint identifying the following defendants: Steven Clark, M.D.; Samuel Duff Austin, M.D.; Bennie Barnette Wright, Jr., M.D.; the Estate of Barry Stephen Sullivan, M.D. ("Dr. Sullivan"); Cleveland Clinic, PA; Cleveland Medical Clinic, Ltd.; Alliance; and Cleveland Medical Clinic, PLLC. Price substituted the newly named defendants for John Does 1-5 from the original complaint. The complaint alleged negligence and gross negligence in the failure to treat and/or properly diagnose Mr. Price's pituitary tumor. Dr. Sullivan treated Mr. Price from 1994 until 2000. Dr. Austin treated Mr. Price in 1990. Dr. Wright treated Mr. Price from 2000 until 2002. Dr. Clark treated Mr. Price from 2000 until Mr. Price's death in June 2004. |
| August 28, 2006 | Trial court entered an order denying defendants' Motion to Amend Judgment. |
| September 5, 2006 | Defendants filed Answers and First Defenses and Motions to Dismiss. |
| March 19, 2007 | Trial court entered an Amended Order that dismissed the five defendants substituted in the Third Amended Complaint for John Does 1-5: Drs. Samuel Austin, Bennie B. Wright, Jr. and Barry Stephen Sullivan; and Cleveland Clinic, P.A., Cleveland Medical Clinic, Ltd. The trial court clarified that the time period during which Dr. Clark and Cleveland Medical Clinic, PLLC, were not subject to MTCA immunity was from October 1, 2003, to January 31, 2004. Thus, according to the trial court, Price could maintain a claim for conduct that occurred only during this time period. |

August 20, 2007    Trial court entered an order granting summary judgment for the remaining defendants, Dr. Clark and Cleveland Medical Center, PLLC, on the basis that Price was unable to establish any genuine issue of material fact that Dr. Clark had deviated from the standard of care at any point during the period of time from October 1, 2003, through January 31, 2004.

¶5.    The July 24, 2006, Order Granting Partial Summary Judgment dismissed with prejudice the defendants subject to immunity under the MTCA. All claims not subject to the MTCA were dismissed without prejudice. As to the original complaint, the trial court looked at three separate issues: (1) what legal effect should be given to the original complaint, (2) what legal effect should be given to the summonses issued and served following the original complaint, and (3) what legal effect should be given to the responses that the defendants filed in response to the original complaint. The trial court found no conflict or ambiguity between the sixty-day-notice provision of Mississippi Code Section 15-1-36 and the noneconomic-damages provision under Section 11-1-60.

¶6.    The trial court, relying on *University of Mississippi Medical Center v. Easterling*, 928 So. 2d 815 (Miss. 2006), determined that the proper remedy for violating the notice requirements of Sections 15-1-36(15) and 11-46-11 was dismissal. Moreover, the trial court determined that, since the amended complaint, filed in June 2005, was the first complaint filed after all defendants had been issued proper notice of claim, the amended complaint should be treated as an original complaint. Thus, in referring to the original complaint filed on August 31, 2004, the trial court opined that, "the summonses issued pursuant to such complaint were of no legal effect and any pleadings filed in response thereto were likewise

7

mere surplusage." The trial court also found that "no leave of [the] court was required" when Price filed the June 27, 2005, amended complaint because "there was nothing to amend."

¶7. Moreover, the trial court determined that April 9, 2004, the date of diagnosis of the pituitary tumor, was the date that the plaintiff should have discovered the alleged negligence that gave rise to the cause of action. Since the original complaint no longer had any legal effect, the trial court started the tolling of the statute of limitations with the filing of the June 27, 2005, amended complaint. Because the amended complaint was never served on Dr. Clark, Alliance, or Cleveland Medical Clinic, the trial court tolled the statute of limitations for 120 days pursuant to Rule 4 of the Mississippi Rules of Civil Procedure. Likewise, the trial court tolled the statute of limitations for only 120 days after the November 2, 2005, second amended complaint was filed, because Price again failed to serve the defendants with the second amended complaint. Ultimately, the trial court found that, with all available tolling – ninety-five days for the notice-of-claim letters, and 120 days for each filed-but-unserved amended complaint – the one-year statute of limitations under the MTCA had expired on March 10, 2006. Thus, all claims against MTCA defendants were dismissed with prejudice. All claims against non-MTCA defendants were dismissed without prejudice. The trial court did not, however, specify which defendants were and were not subject to the MTCA.

¶8. The March 19, 2007, order dismissed with prejudice the parties substituted for John Does 1-5, including Samuel Duff Austin, M.D.; Bennie Barnette Wright, Jr., M.D.; Estate of Barry Stephen Sullivan, M.D.; Cleveland Medical Clinic, Ltd.; and Cleveland Clinic, PA,

8

on the basis that all applicable statutes of limitations had run and the substituted parties did not relate back to the original complaint under either Rule 15(c) or Rule 9(h) of the Mississippi Rules of Civil Procedure. Furthermore, the trial court found that Price had failed to use due diligence in ascertaining the identities of these parties. All claims arising against Alliance were dismissed with prejudice. All claims against Dr. Clark, during his employment with Alliance and Cleveland Medical Clinic, a service of Delta Regional Medical Center were dismissed with prejudice in keeping with the trial court's previous finding that these defendants were subject to MTCA immunity, and thus entitled to dismissal with prejudice due to the running of the statute of limitations. All other claims embraced by the third amended complaint against Dr. Clark and Cleveland Medical Clinic, PLLC, from the time period of October 1, 2003, through January 31, 2004, were not dismissed.

¶9.     An order entered on August 20, 2007, granted summary judgment in favor of Dr. Clark and Cleveland Medical Clinic, PLLC, on the basis that Price was unable to establish any genuine issue of material fact that Dr. Clark had deviated from the applicable standard of care at any point from October 1, 2003, through January 31, 2004. Thus, the circuit court entered a judgment dismissing with prejudice all claims against Dr. Clark and Cleveland Medical Clinic, PLLC.

## DISCUSSION

¶10.    Pursuant to Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is

9

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). This Court reviews a trial court's grant or denial of a motion for summary judgment or a motion to dismiss under a de novo standard. *Arceo v. Tolliver*, 949 So. 2d 691, 694 (Miss. 2006) (citing *Monsanto v. Hall*, 912 So. 2d 134, 136 (Miss. 2005)). Moreover, this Court reviews the application of the MTCA de novo. *Lee v. Mem'l Hosp.*, 999 So. 2d 1263, 1266 (Miss. 2008) (citing *City of Jackson v. Brister*, 838 So. 2d 274, 278 (Miss. 2003)).

¶11. Plaintiff Price espouses ten assignments of error by the trial court for this Court's review:

(1) Whether the trial court erred in not granting Plaintiff an exemption from the notice requirements under Mississippi Code Sections 15-1-36 and 11-46-11 because her cause of action arose within sixty days of September 1, 2004 (the date the noneconomic damages pursuant to Section 11-1-60(a)(2) went into effect);

(2) Whether the trial court erred in dismissing Plaintiff's original complaint due to Plaintiff filing her complaint only one day after the Notice-of-Claim Letter;

(3) Whether the trial court erred in ruling that Plaintiff's August 30, 2004, Notice-of-Claim letters failed to substantially comply with Section 11-46-11;

(4) Whether the trial court erred in ruling that Plaintiff's original August 31, 2004, complaint failed to toll the statute of limitations until the court entered an order dismissing it in July 2006;

(5) Whether the trial court erred in holding Plaintiff to the knowledge of Cleveland Medical Alliance's status as an "instrumentality" of Greenwood Leflore Hospital;

(6) Whether the trial court erred in not allowing the Plaintiff to conduct further discovery and to take depositions to determine the level of control Greenwood

10

Leflore Hospital had over Cleveland Medical Alliance, LLP, and its employees;

(7) Whether the trial court erred in ruling that Cleveland Medical Alliance, LLP, was subject to the Mississippi Tort Claims Act, as an instrumentality of Greenwood Leflore Hospital;

(8) Whether Cleveland Medical Alliance, LLP, and Dr. Clark waived affirmative defenses of MTCA protections by waiting over one year before raising the defense and by waiting an additional five months before noticing motions to dismiss for a hearing, after actively participating in the litigation of this matter;

(9) Whether the trial court erred in dismissing claims against Defendants Drs. Austin, Wright, Sullivan, Cleveland Medical Clinic, LTD, and Cleveland Medical Clinic, PA, which were added as named Defendants in the Plaintiff's Third Amended Complaint replacing the previously unnamed Defendants of John Does 1-5;

(10) Whether the trial court, all circumstances considered, erred in not giving Plaintiff her right to redress in the courts.

¶12.  Dr. Steven Clark and Cleveland Medical Clinic, PLLC, cross-appeal the trial court's August 28, 2006, order denying their motion to amend judgment and the March 19, 2007, amended order granting summary judgment on the basis that the trial court erred in failing to dismiss the claims against them with prejudice due to the deficient original complaint and subsequent amendments. Moreover, these defendants assert that, without any tolling effect by the complaints, the only tolling is the sixty-day period following Price's August 30, 2003, notice-of-claim letters for all non-MTCA claims, meaning the statute of limitations would have expired two years and sixty days after the April 9, 2004, diagnosis of Mr. Price's pituitary tumor. According to the defendants, the expiration of the statute of limitations occurred on June 8, 2006, well before the July 26, 2006, filing of Price's third amended

11

complaint. Therefore, the defendants contend the trial court erred in granting Price leave to amend and to file the third amended complaint.

¶13. Defendants Drs. Austin, Wright, and Sullivan; and Cleveland Medical Clinic Ltd., and Cleveland Clinic, P.A., ask this Court to affirm the trial court's dismissal of all claims against them with prejudice.

¶14. We combine, restate and reorder these various issues for the sake of today's discussion.

      **I.      WHETHER THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S ORIGINAL COMPLAINT DUE TO PLAINTIFF'S FAILURE TO COMPLY WITH THE STATUTORY NOTICE REQUIREMENTS OF SECTIONS 15-1-36(15) AND 11-46-11(1).**

¶15. Price first filed suit on August 31, 2004, having mailed notice-of-claim letters only one day prior, on August 30, 2004. Price admits that, in an attempt to avoid the cap on noneconomic damages effective September 1, 2004, she willfully ignored the sixty-day notice requirement of Mississippi Code Section 15-1-36(15). Miss. Code Ann. § 15-1-36(15) (Rev. 2003). Price argues that she should be exempt from the sixty-day notice-of-claim requirement found in Section 15-1-36(15) and the ninety-day notice-of-claim requirement found in Section 11-46-11(1) because those requirements would have subjected Price's original complaint to the noneconomic cap on damages found in Mississippi Code Section 11-1-60. Miss. Code Ann. § 11-46-11(1) (Rev. 2002); Miss. Code Ann. § 11-1-60 (Rev. 2004). She argues she should not be subject to the noneconomic-damages cap because the limitation was not in effect at the time of Mr. Price's death. The trial court's opinion noted

that Price could have avoided being subject to the September 1, 2004, cap on damages only if she had filed sixty days after her husband's diagnosis and had not waited to file until after his death. We agree with the trial court in this respect. The statute of limitations for a wrongful-death claim is subject to, and limited by, the statute of limitations associated with the underlying tort that resulted in the wrongful death. ***Thiroux v. Austin***, 749 So. 2d 1040, 1042 (Miss. 1999). To be more precise,

> the Mississippi wrongful-death statute, despite the Legislature's assigned nomenclature, encompasses all claims–including survival claims which could have been brought by the decedent, wrongful-death claims, estate claims, and other claims–resulting from a tort which proximately caused a death. And where death is not an immediate result of the tort, the limitation periods for the various kinds of claims may not begin to run at the same time.

***Caves v. Yarbrough***, 991 So. 2d 142, 149-50 (Miss. 2008). Thus, analysis of the running of the statute of limitations in a wrongful-death case may differ from one claim to another, depending on the particular claim asserted.

¶16. Strict compliance with statutory notice is required, regardless of why the plaintiff failed to provide notice. *See **Univ. of Miss. Med. Ctr. v. Easterling***, 928 So. 2d 815, 819-20 (Miss. 2006); ***Pitalo v. GPCH-GP, Inc.***, 933 So. 2d 927, 929 (Miss. 2006).

¶17. Price argues that, because the caselaw prior to ***University of Mississippi Medical Center v. Easterling***, 928 So. 2d 815 (Miss. 2006), was more lenient as to notice requirements and because this cause of action was filed in 2004, ***Easterling*** should not apply. *See e.g.*, ***City of Pascagoula v. Tomlinson***, 741 So. 2d 224, 228 (Miss. 1999) (finding that

13

dismissal of a lawsuit for failure to comply with the waiting period was a disproportionate remedy). However, we have held that the statutory notice is required for claims filed on or after January 1, 2003, regardless of when the claim accrued. *Pitalo*, 933 So. 2d at 928-29.

¶18. Thus, dismissal was the proper remedy for failure to comply with the notice requirements. The law did not change as to the notice provisions. It was this Court's tolerance of violating notice provisions that waned. As this Court stated in *Easterling*:

> Since the MTCA's passage in 1993, a considerable amount of time has passed for the legal profession to become aware of the ninety-day notice requirement in section 11-46-11(1). *See* 1993 Miss. Laws 476. The result here, as in *Ivy*, is that the ninety-day notice requirement under section 11-46-11(1) is a "hard-edged, mandatory rule which the Court strictly enforces."

*Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006) (quoting *Ivy v. GMAC*, 612 So. 2d 1108, 1116 (Miss. 1992)).

¶19. As to the requisite notice required for medical-negligence claims falling under Section 15-1-36(15), this Court has stated:

> When interpreting a statute that is not ambiguous, this Court will apply the plain meaning of the statute. *Claypool v. Mladineo*, 724 So. 2d 373, 382 (Miss. 1998). In construing a statute, the Court must seek the intention of the Legislature, and knowing it, must adopt that interpretation which will meet the real meaning of the Legislature. *Evans v. Boyle Flying Service, Inc.*, 680 So. 2d 821, 825 (Miss. 1996). When drafting Miss. Code Ann. Section 15-1-36(15), the Legislature did not incorporate any given exceptions to this rule which would alleviate the prerequisite condition of prior written notice. Simply stated, "shall" is mandatory, while "may" is discretionary. *Franklin v. Franklin*, 858 So. 2d 110, 114 (Miss. 2003). Pitalo's failure to send notice of her intent to sue clearly violates the mandatory instructions concerning notice in Miss. Code Ann. Section 15-1-36(15).

*Pitalo v. GPCH-GP, Inc.*, 933 So. 2d 927, 929 (Miss. 2006). Unless otherwise specified, decisions of the Mississippi Supreme Court are presumed to have a retroactive effect. *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc*., 753 So. 2d 1077, 1093 (Miss. 2000). Mississippi law now requires strict compliance with the ninety-day-notice requirement in the Mississippi Tort Claims Act. *See* Miss. Code Ann. § 11-46-11(1) (Rev. 2002); *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 41 (Miss. 2007); *Easterling*, 928 So. 2d at 819-20. Accordingly, the trial court did not err in its finding that the notice requirements are clear, must be strictly applied, and must be given retroactive effect.

II.      **WHETHER THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF'S AUGUST 30, 2004, NOTICE-OF-CLAIM LETTERS FAILED TO SUBSTANTIALLY COMPLY WITH SECTION 11-46-11(2).**

¶20.      Price argues that the trial court erred in finding that the August 30, 2004, notice-of-claim letters did not substantially comply with the statutory requirements of MTCA, section 11-46-11(2). That section states:

> Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. §11-46-11(2) (Rev. 2002). Most recently, in *Lee v. Memorial Hospital of Gulfport*, 999 So. 2d 1263 (Miss. 2008), this Court reaffirmed that substantial compliance,

15

not strict compliance, with Section 11-46-11(2) is required. *Id*. at 1266 (citing *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237,1240 (Miss.1998). "What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination." *Carr v. Town of Shubuta*, 733 So. 2d 261, 263 (Miss. 1999).

¶21.    Defendants argue that Price failed to comply substantially with Section 11-46-11(2) inasmuch as the letters did not contain allegations of the nature of the negligent conduct or actual circumstances that brought about the injury, the time and place of alleged negligent conduct, the time and place where the injury occurred, the names of all persons known to be involved, the amount of money damages sought, or claimant's residence at the time of injury and at the time of filing the notice.  Defendants are correct in almost all of their assertions. The three letters, identical in content, contained no language concerning the time period when Mr. Price allegedly suffered his injury. Also, there also was  no mention of the names of the persons involved. In fact, no mention of any physicians' names appeared in the body of the letter. While Dr. Clark's letter put him on sufficient notice, the letters addressed to Cleveland Medical Clinic, PLLC, Providence Healthcare Company, and Alliance could have referred to anyone employed at those facilities. Moreover, the notice-of-claim letter for Alliance was served on Dr. Clark, who at no time was authorized to accept service on behalf of the clinic. Letters to Greenwood Leflore Hospital and Delta Regional Medical Center were not sent until February 2005.  Furthermore, the letters did not contain a monetary amount of the damages sought or the residence of the claimant either at the time of injury or at the time

16

of the filing of the complaint. *See **Parker v. Harrison County Bd. of Supervisors***, 987 So. 2d 435, 441 (Miss. 2008).

¶22. Accordingly, the trial court did not err in concluding that substantial compliance with Section 11-46-11(2) was the proper standard, and in finding that the August 30, 2004, notice-of-claim letters did not substantially comply with Section 11-46-11(2). This issue is without merit.

III. **WHETHER THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF'S ORIGINAL, AUGUST 31, 2004, COMPLAINT FAILED TO TOLL THE STATUTE OF LIMITATIONS UNTIL THE COURT ENTERED AN ORDER DISMISSING IT IN JULY 2006.**

¶23. In its initial ruling on July 24, 2006, the trial court granted partial summary judgment in favor of defendants, dismissing all defendants subject to MTCA immunity with prejudice and all defendants not subject to MTCA immunity without prejudice. The trial court in its Amended Order, entered March 19, 2007, clarified that Alliance, at all times during its existence (May 30, 1997, until September 30, 2003) was subject to MTCA immunity due to its affiliation with Greenwood Leflore Hospital. Dr. Clark was an employee of Alliance from 1999 until September 30, 2003; therefore, he was subject to MTCA immunity during this time period. Moreover, on February 1, 2004, Dr. Clark became an employee of Cleveland Medical Clinic, an entity owned and operated by Delta Regional Medical Center–thus regaining his MTCA immunity.

¶24. Price argues that the original August 31, 2004, complaint tolled the statute of limitations as to both the MTCA and Section 15-1-36 claims, given that it was filed within the one-year statute of limitations under the MTCA and the two-year statute of limitations under Section 15-1-36. According to the defendants, all claims against MTCA and non-MTCA defendants should have been dismissed against them with prejudice because the original complaint was invalid for want of either sixty-day notice pursuant to Section 15-1-36 or ninety-day notice pursuant to the MTCA, thus, that complaint failed to have any tolling effect.

¶25. Because it was dismissed for want of proper notice, the trial court gave no legal effect to the original complaint. Therefore, the trial court found that this complaint should have no tolling effect for either the MTCA or Section 15-1-36 claims. The trial court treated the June 2005 Amended Complaint as the original complaint because it was the first complaint filed after all defendants had been served notice-of-claim letters.

¶26. The trial court began the tolling of the statute of limitations with the February 3, 2005, MTCA notice-of-claim letters. As of February 3, 2005, according to the trial court, there were sixty-five days left in which to file the complaint. Thus, May 9, 2005, was the ninety-fifth day. Because the Amended Complaint and the Second Amended Complaint were never served on Dr. Clark, Alliance, or Cleveland Medical Clinic, the trial court allowed 120 days of tolling for each amended complaint to be counted toward the MTCA and Section 15-1-36 statute of limitations. According to the trial court, by June 27, 2005, sixteen days were left,

18

and the remaining sixteen days began to run on the one-hundred-twentieth day, that being October 25, 2005. The trial court found that, with possible stays and tolling, the one-year statute of limitations ran against all MTCA defendants on March 10, 2006. As a result, the trial court dismissed with prejudice all defendants subject to the MTCA. All non-MTCA defendants were dismissed without prejudice based on the trial court's finding that the two-year statute of limitations had not run for Section 15-1-36. This order was entered on July 24, 2006.

¶27. No precedent is cited by either the trial court or the parties supporting the trial court's failure to give a tolling effect to the original complaint due to Price's failure to provide statutory notice. Rule 3(a) of the Mississippi Rules of Civil Procedure states "[a] civil action is commenced by filing a complaint with the court." Ordinarily, when a complaint is filed and properly served, that complaint tolls the running of the statute of limitations. *Owens v. Mai*, 891 So. 2d 220, 223 (Miss. 2005).

¶28. The defendants argue that dismissal with prejudice of MTCA claims should be affirmed and that all Section 15-1-36 claims against them should have been dismissed with prejudice because no valid original complaint was ever filed due to the violation of the statutory notice requirements. The defendants contend that the trial court was correct in its finding that the sixty-day notice is mandatory for filing a valid Section 15-1-36 complaint and ninety-day notice is mandatory for filing a valid MTCA complaint. Moreover, the defendants interpret *Bunton v. King*, 995 So. 2d 694 (Miss. 2008), as holding that

19

subsequent amendments to pleadings cannot be found to cure violations of notice requirements, thus, no valid complaints have been filed to date.

¶29.    Defendants are correct in their assertion that *Bunton* stands for the premise that notice-of-claim letters and amendments filed after the suit is commenced will not constitute valid notice or prevent dismissal of a suit. *Id.* at 696. In *Bunton,* the plaintiffs filed suit only seven days after sending a MTCA notice-of-claim letter in clear violation of the ninety-day-notice requirement of Section 11-46-11(1). *Id.* The trial court granted the plaintiffs leave to amend and subsequently held that the amended complaint related back to the date of the original complaint under Mississippi Rule of Civil Procedure 15(c), for the purpose of the statute of limitations. *Id.* at 695. This Court held the plaintiffs' amended complaint could not serve to cure the failure to provide ninety-day notice and that dismissal was the proper remedy. *Id.* at 696. *Bunton* should not, however, be interpreted as abrogating the Mississippi Rules of Civil Procedure in favor of statutory pre-suit notice requirements by invalidating complaints that were properly filed and served.

¶30.    While failure to provide proper statutory notice cannot be cured by serving notice-of-claim letters after a complaint is filed, a properly served complaint–albeit a complaint that is wanting of proper pre-suit notice–should still serve to toll the statute of limitations until there is a ruling from the trial court. In treating the original complaint as if it was never filed, the trial court determined that the summonses issued pursuant to the original complaint and the response filed by Dr. Pande were surplusage. In doing so, the  trial court declined to

20

address the defendants' contention that Dr. Clark was improperly served on behalf of Alliance on the basis that he was not a designated agent for service of process. Because there is no finding on the record by the trial court on the issue of whether Alliance has ever been properly served with process, this case must be remanded to the trial court for a determination of this issue.

¶31. Accordingly, we agree with Price that the August 31, 2004, complaint was properly filed and served within both the one-year statute of limitations under MTCA and the two-year statute of limitations under Section 15-1-36 as to defendants Dr. Clark and the Cleveland Medical Clinic. Because Price failed to comply with the requisite notice requirements, dismissal was the proper remedy; however, the trial court erred in dismissing these defendants with prejudice, given that the complaint served to toll the statute of limitations until the trial court's July 2006 ruling.

       **IV.    WHETHER THE TRIAL COURT ERRED IN HOLDING PLAINTIFF TO THE KNOWLEDGE OF CLEVELAND MEDICAL ALLIANCE'S STATUS AS AN "INSTRUMENTALITY" OF GREENWOOD LEFLORE HOSPITAL.**

¶32. Cleveland Medical Alliance has been found by this Court to be an instrumentality of Greenwood Leflore Hospital subject to the protections of MTCA. *See Estate of Grimes v. Warrington*, 982 So. 2d 365, 369 (Miss. 2008). Price argues that she had no way of knowing of the affiliation between Cleveland Medical Alliance and Greenwood Leflore Hospital before filing suit, since Cleveland Medical Alliance was no longer in existence and did not

21

at any time advertise its affiliation with Greenwood Leflore Hospital. The defendants contend that, after Price was informed of Cleveland Medical Alliance's status as a MTCA-covered entity, she had ample time before the statute of limitations expired to provide proper notice and file suit against it. In support of this argument, the defendants refer to a letter sent to Price dated December 23, 2004, that indicated that Cleveland Medical Alliance, LLP, was an instrumentality of Greenwood-Leflore Hospital. Additionally, the defendants maintain that, along with this letter, they provided the Agreement of Partnership for Alliance, the Physician Employment Agreement between Dr. Steven Clark and Alliance; and the Partnership Dissolution for Alliance; the Operating Agreement for Cleveland Medical Clinic, PLLC; and the Physician Employment Agreement for Dr. Steven Clark and Delta Regional Medical Center. Price concedes that she received this documentation and the December 23, 2004, letter.

¶33. The defendants further argue that, even if Price had filed the suit with limited knowledge of the affiliation, she could have cured any procedural deficits upon receipt of notice by defense counsel as early as December 23, 2004. The trial court did not err in holding Price to knowledge of the affiliation.

¶34. We thus find this issue to have no merit.

V. **WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING PLAINTIFF TO CONDUCT FURTHER DISCOVERY AND TAKE DEPOSITIONS TO DETERMINE THE LEVEL OF CONTROL GREENWOOD LEFLORE HOSPITAL HAD OVER**

22

**CLEVELAND MEDICAL ALLIANCE, LLP, AND ITS EMPLOYEES.**

**VI. WHETHER THE TRIAL COURT ERRED IN RULING THAT CLEVELAND MEDICAL ALLIANCE, LLP, WAS SUBJECT TO THE MISSISSIPPI TORT CLAIMS ACT, AS AN INSTRUMENTALITY OF GREENWOOD LEFLORE HOSPITAL.**

¶35.   Price argues that the trial court erred in not allowing her the opportunity, via discovery, to prove that Cleveland Medical Alliance, LLP, was not an instrumentality of Greenwood Leflore Hospital. The defendants point to the fact that scheduled depositions of Dr. Steven Clark were cancelled at the agreement of Price and were never rescheduled by Price. Moreover, the defendants argue that Price would have made the same arguments at trial that were made by the plaintiff in *Estate of Grimes v. Warrington*, 982 So. 2d 365 (Miss. 2008), which were rejected flatly by this Court in *Grimes*. Finally, the defendants argue that, even if Price had been allowed discovery as to this issue, it would not have served to divest Alliance of its MTCA protection.

¶36.   In *Estate of Grimes,* the issue before this Court was whether Alliance was entitled to the protections, limitations, and immunities of the MTCA as an "instrumentality" of Greenwood Leflore Hospital. In reaching its decision, the Court in *Grimes* relied on *Bolivar Leflore Medical Alliance, LLP v. Williams*, 938 So. 2d 1222 (Miss. 2006), a case involving a partnership agreement between a medical clinic and Greenwood Leflore Hospital that was nearly identical in its provisions to the agreement between Alliance and Greenwood Leflore

23

Hospital. Just as in *Bolivar Leflore Medical Alliance*, the Court in *Grimes* found that the partnership agreement between Greenwood Leflore Hospital and Alliance entitled the clinic and its employee to the protection of the MTCA, because Greenwood Leflore Hospital had maintained sufficient control over the clinic and its employee. *Estate of Grimes,* 982 So. 2d at 369 (Miss. 2008).

¶37. Price attempts to distinguish the defendant in *Grimes* from the defendants in this case by pointing to the fact that Dr. Warrington, the defendant in *Grimes*, was a partner of Cleveland Medical Alliance rather than an employee, as is the case with Dr. Clark. The analysis by this Court in *Grimes*, however, was not based on Dr. Warrington's status as a partner, nor does the MTCA make immunity contingent on whether a defendant is a partner versus an employee. Moreover, Price had notice of Cleveland Medical Alliance's MTCA status as early as December 2004. As previously discussed, the trial court did not err in finding that Price had ample opportunity to correct her procedural missteps. For the reasons stated, we thus find this issue to have no merit.

**VII. WHETHER THE CLEVELAND MEDICAL ALLIANCE, LLP, AND DR. CLARK WAIVED AFFIRMATIVE DEFENSES OF MTCA PROTECTIONS BY WAITING MORE THAN ONE YEAR BEFORE RAISING THE DEFENSE AND BY WAITING AN ADDITIONAL FIVE MONTHS BEFORE NOTICING MOTIONS TO DISMISS FOR A HEARING AFTER PARTICIPATING IN THE LITIGATION OF THIS MATTER.**

¶38. Price contends that the defendants waived the affirmative defense of MTCA protection by their delay in raising the defense in their answer and by subsequent active

24

participation in the litigation. The defendants contend that their delay in answering was at Price's request so that she could have an opportunity to cure any procedural defects.

¶39.    Ordinarily, delay coupled with active participation in a lawsuit serves to waive affirmative defenses that otherwise would terminate the action. *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 181 (Miss. 2006).  This Court considers MTCA immunity an affirmative defense.  *Estate of Grimes v. Warrington*, 982 So. 2d 365, 370 (Miss. 2008) (citing *City of Ellisville v. Richardson*, 913 So. 2d 973, 975 (Miss. 2005); *Lumberman's Underwriting Alliance v. City of Rosedale*, 727 So. 2d 710, 712 (Miss. 1998); *Dixon v. Singing River Hosp. Sys*., 632 So. 2d 951, 952 (Miss. 1991)).  In *Grimes*, this Court found that Dr. Warrington waived his MTCA defense when he raised it in his answer but failed to file a motion to dismiss on this ground and instead engaged in litigation by consenting to a scheduling order, participating in written discovery, and conducting depositions. *Grimes*, 982 So. 2d at 370.

¶40.    The defendants argue that, at Price's request, they waited more than one year to answer Price's original August 31, 2004, complaint. Moreover, Price failed to serve her amended Complaint and second amended complaint on the defendants.  This Court agrees with the defendants that Price should not be able to make an argument that her case was prejudiced by the defendants' delay when she requested that all defendants not file any responsive pleadings until she was able to ascertain which defendants were subject to MTCA immunity. Accordingly, this issue is without merit.

**VIII. WHETHER THE TRIAL COURT ERRED IN DISMISSING CLAIMS AGAINST NEWLY-NAMED DEFENDANTS DRS. AUSTIN, WRIGHT, SULLIVAN, CLEVELAND MEDICAL CLINIC, LTD, AND CLEVELAND MEDICAL CLINIC, PA, WHICH WERE ADDED AS NAMED DEFENDANTS IN THE PLAINTIFF'S THIRD AMENDED COMPLAINT, REPLACING THE PREVIOUSLY-UNNAMED DEFENDANTS JOHN DOES 1-5.**

¶41. This assignment of error involves the trial court's ruling as to the newly-named defendants in the third amended complaint. Price filed this third amended complaint more than two years after the diagnosis of her husband's tumor; thus, if the substituted parties did not relate back to John Does 1-5, Price's complaint was time-barred as to the newly-named defendants. The defendants in this third amended complaint, filed July 26, 2006, were as follows: Steven Clark, M.D.; Samuel Duff Austin, M.D.; Bennie Barnette Wright, Jr., M.D.; Estate of Barry Stephen Sullivan, M.D.; Cleveland Medical Alliance, LLP; Cleveland Medical Clinic, PLLC; Cleveland Medical Clinic, Ltd.; and Cleveland Clinic, P.A. Drs. Austin, Wright, and Sullivan, as well as Cleveland Medical Clinic, Ltd. and Cleveland Clinic, P.A., were added in the third amended complaint in place of John Does 1-5, as set out in the original August 31, 2004, complaint.

¶42. Dr. Clark, Alliance, and Cleveland Medical Clinic, PLLC, argue that, because the original complaint had no effect once dismissed, any amended complaint cannot relate back to the August 31, 2004, original complaint under Mississippi Rule of Civil Procedure 15(c), which allows for changing a party where a previously-named party was mistakenly included in the original complaint. Rule 15(c)(2) makes the following distinction between changing

26

a party and substituting a party: "An amendment pursuant to 9(h) is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading." Miss. R. Civ. P. 15(c)(2).

¶43.    The trial court found that, because John Does 1-5 were retained in both the amended and second amended complaints, but eliminated in the third amended complaint, it was clear that Price intended for the newly-named defendants in the third amended complaint to be substituted for John Does 1-5, as opposed to replacing mistakenly-identified parties with the correct parties.  Likewise, Price chooses to travel under Mississippi Rule of Civil Procedure 9(h) in support of her argument that the John Does 1-5 were fictitious parties. Rule 9(h) states:

> When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.

Miss. R. Civ. P. 9(h). As the trial court aptly explained, a Rule 9(h) amendment does not change the party, but supplies "the true identity of a party who is already in litigation." The trial court's opinion explained the purpose of Rule 9(h) as follows:

> It is significant that the word "unknown" does not appear in MRCP 9(h). Rather the rule speak[s] in terms of a plaintiff being "ignorant of the name of an opposing party." Thus, the language of MRCP 9(h) assumes the existence of such a party and the plaintiff's awareness of such existence. It is not the intent of MRCP 9(h) to permit a plaintiff to bring into the litigation defendants whose existence was unknown to the plaintiff at the commencement of the action.

27

The trial court found that, at the time the original complaint was filed, Price neither knew the identities of the parties, nor was she aware of any facts giving rise to any cause of action against such unknown individual or corporate entity; therefore, the trial court did not err in finding that Price's substitution did not comport with the purpose of Rule 9(h). Furthermore, the trial court found that Price did not act with reasonable diligence in identifying these parties.

¶44. The defendants argue that the trial court was correct inasmuch as Price's third amended complaint cannot relate back to her original August 31, 2004, complaint, because she failed to use due diligence in ascertaining the identity of the alleged tortfeasors. Price concedes that in July 2004, she obtained medical records from Cleveland Medical Clinic that dated back to 2001; however, Price argues that Cleveland Medical Clinic, Ltd., Alliance, and Cleveland Medical Clinic, PLLC, were identified ambiguously in the medical records as Cleveland Clinic, thus, according to Price, giving the impression that they were all the same clinic. Price admits that she consulted an expert prior to filing suit; however, upon obtaining more medical records, Price's expert was able to offer an opinion that a referral for an MRI should have been made after Mr. Price became blind in 1989. In support of her argument that Rule 9(h) allows for fictitious parties where a plaintiff is ignorant of the facts giving rise to a cause of action, Price cites *Womble v. Singing River Hospital*, 618 So. 2d 1252 (Miss. 1993). In *Womble* this Court stated:

> It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the

28

person, he is still ignorant of his name if he lacks knowledge of the facts giving him a cause of action against that person.

*Id.* at 1267.

¶45. On the other hand, the defendants cite ***Rawson v. Jones***, 816 So. 2d 367 (Miss. 2001), for the premise that Rule 9(h) requires a plaintiff to pursue reasonably diligent inquiry into the true identities of the fictitious parties "through the use of judicial mechanisms such as discovery." *Id*. at 369 (citing ***Doe v. Miss. Blood Servs., Inc***., 704 So. 2d 1016, 1019 (Miss. 1997)). The Court in ***Rawson*** emphasized that the language of ***Womble*** is not to be interpreted as giving "potential plaintiffs permission to sit on their rights." ***Rawson***, 816 So. 2d at 369.

¶46. The trial court did not err in finding that Price was not reasonably diligent in ascertaining the facts that gave rise to her claims against the substituted defendants and that she thus was not entitled to the shield of Rule 9(h). Price received medical records pertaining to her husband's treatment prior to filing suit, and the defendants provided her with Alliance's partnership agreement and Dr. Clark's employment records as early as December 2004. Accordingly, we find that the trial court committed no error in determining that the complaint naming the substituted parties did not relate back to the original complaint under any applicable rule of civil procedure. The trial court did not err in finding that Price had failed to use due diligence in ascertaining the identities of the proper parties, and that the MTCA one-year statute of limitations had thus run at the time Price filed suit against the

29

aforementioned defendants.  In sum, the trial court committed no error in dismissing those defendants with prejudice.

## IX.  WHETHER THE TRIAL COURT ERRED IN NOT GIVING PLAINTIFF HER RIGHT TO REDRESS IN THE COURTS.

¶47.    Price asserts that she was denied her right to redress in the courts. This Court has held that a plaintiff's right to redress is not absolute.  *See Arceo v. Tolliver*, 949 So. 2d 691 (Miss. 2006).  In *Arceo*, this Court stated:

> "There is no absolute right of access to the courts. All that is required is a *reasonable* right of access to the courts –a reasonable opportunity to be heard." *Wayne v. Tenn. Valley Auth.*, 730 F.2d 392, 403 (5th Cir. 1984) (cited with approval in *Townsend* [*v. Estate of Gilbert*], 616 So. 2d 333, 337 (Miss. 1993)).

> While the right under our state and federal constitutions to access to our courts is a matter beyond debate, this right is coupled with responsibility, including the responsibility to comply with legislative enactments, rules, and judicial decisions. While the plaintiff in today's case had the constitutional right to seek redress in our state courts for the unfortunate death of her daughter, she likewise had the responsibility to comply with the applicable rules and statutes, including section 15-1-36(15). Any different approach would render meaningless any rule or statute setting time limitations on litigants.

*Id.* at 697 (emphasis in original). Article 3, Section 24 of the Mississippi Constitution provides:

> All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.

Miss. Const. art. 3, §  24 (1890).  However, notwithstanding this constitutional right, the Legislature has certain authority via statutory enactments, and this Court possesses its inherent rule-making authority to set guidelines as to how redress may be sought through our

30

courts.  No party may sit on his or her rights.  "The law is created for the watchful and not for the negligent." ***Harrison Enters. v. Trilogy Commc'ns, Inc.***, 818 So. 2d 1088, 1095 (Miss. 2002).

¶48.     Additionally, as this Court stated in ***Carter v. Mississippi Department of Corrections***, 860 So. 2d 1187, 1194 (Miss. 2003):

> [T]he remedy clause, Miss. Const. art. 3, § 24, does not conflict with sovereign immunity, does not require exceptions to sovereign immunity and does not grant an absolute guarantee of a trial.

***Id.*** at 1194 (citing ***Gentry v. Wallace***, 606 So. 2d 1117 (Miss. 1992) (overruled on other grounds by ***Jenkins v. Pensacola Health Trust, Inc.***, 933 So. 2d 923, 926 (Miss. 2006)); *see also* ***Robinson v. Stewart***, 655 So. 2d 866 (Miss. 1995).

¶49.     Accordingly, this assignment of error is without merit.[3]

---

[3]In her Appellant's Combined Reply and Response Brief for Appellants/Cross-Appellees, Price asserted that the MTCA is unconstitutional, which prompted the Appellees to file a Motion to Strike New Arguments on Appeal.  By single justice order, this motion was passed for consideration on the merits of this appeal.  We note that this Court has been consistent in holding that, especially when constitutional questions are raised for the first time on appeal, we will not consider the merits of such issues.  ***Stockstill v. State***, 854 So. 2d 1017, 1023 (Miss. 2003).   When the constitutionality of a statute is called into question, it should be done at the trial court level so that the Attorney General may be given proper notice pursuant to Mississippi Rule of Civil Procedure 24(d). ***Cockrell v. Pearl River Valley Water Dist.***, 865 So. 2d 357, 360 (Miss. 2004) (citing ***Barnes v. Singing River Hosp. Sys.***, 733 So. 2d 199, 202-03 (Miss. 1999)). *See also* ***Williams v. Skelton***, 6 So. 3d 428, 429-30 (Miss. 2009) (citing ***Alexander v. Daniel***, 904 So. 2d 172, 183 (Miss. 2005)).  However, it appears that Price's issue raised in her Reply Brief is merely an extension of the issue raised in her original Appellant's Brief filed with this Court. Thus, we are satisfied that our discussion of Issue IX adequately addresses the issue as initially couched in Price's original Appellant's Brief filed with this Court. Accordingly, we have this day entered an order dismissing as moot the Appellees' Motion to Strike new Arguments on Appeal.

**X.    WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN ITS AUGUST 20, 2007, ORDER.**

¶50.    Price appeals the trial court's August 20, 2007, final order granting summary judgment in favor of Dr. Clark and Cleveland Medical Clinic, PLLC. The trial court ultimately found that Price was unable to show any negligible acts by Dr. Clark (and thus his employer) from October 1, 2003, through January 31, 2004; therefore, the trial court granted summary judgment to the defendants based on Price's expert declining to offer an opinion that Dr. Clark had deviated from the standard of care at any point after September 9, 2003. While Price has appealed the trial court's August 20, 2007, Order Granting Summary Judgment, she has not briefed any arguments showing any issue of material fact that Dr. Clark deviated from the standard of care during the time period he was not subject to MTCA immunity. *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 517 (Miss. 2007) (failure to cite authority in support of claims of error precludes appellate review of those claims) (citing *Grey v. Grey*, 638 So. 2d 488, 491 (Miss. 1994)) (other citations omitted)).

¶51.    Thus, we find no merit in the appeal of the August 20, 2007, Order.

**XI.    WHETHER THE TRIAL COURT ERRED IN NOT DISMISSING ALL CLAIMS AGAINST DEFENDANTS STEVEN CLARK AND CLEVELAND MEDICAL CLINIC, PLLC, WITH PREJUDICE.**

¶52.    Dr. Steven Clark and Cleveland Medical Clinic, PLLC, cross-appeal the trial court's August 28, 2006, order denying their Motion to Amend Judgment and the March 19, 2007, Amended Order Granting Summary Judgment on the basis that the trial court erred in not

32

dismissing all claims against them with prejudice. As previously discussed, this Court found that the trial court erroneously dismissed the MTCA defendants with prejudice.

¶53.     The defendants now argue that the two-year statute of limitations pursuant to Section 15-1-36, even with the sixty-day tolling effect of the notice-of-claim letters, expired on June 8, 2006. In essence, the defendants again argue that no tolling effect for the purposes of Section 15-1-36 should have been given to the original complaint, because the sixty-day notice requirement was violated. As previously stated, this Court has found no precedent that supports this premise. Despite the fact that Price filed her claim only one day after sending her notice-of-claim letters, the proper remedy was dismissal without prejudice because the claim, albeit in violation of the sixty-day notice requirement, did serve to toll the two-year statute of limitations until the trial court dismissed the claims against Dr. Clark and Cleveland Medical Clinic without prejudice on July 24, 2006. We find no error on the part of the trial court in doing so. Accordingly, the defendants' cross-appeal is without merit.

### XII.     WHETHER THE TRIAL COURT ERRED IN ALLOWING PRICE TO FILE A THIRD AMENDED COMPLAINT.

¶54.     Drs. Austin, Wright, and Sullivan, and Cleveland Medical Clinic, Ltd., and Cleveland Clinic, P.A., cross-appeal the trial court's July 24, 2006, order granting Price leave to file her third amended complaint on the basis that it was improvidently granted. The trial court's July 24, 2006, order cites Rule 15(a) of the Mississippi Rules of Civil Procedure, which states, in pertinent part, "leave shall be freely given when justice so requires." Thus, leave to amend was properly granted, given that to deny it would deny a plaintiff recourse where an

33

argument could be made that the substituted parties in the amended complaint related back to the fictional parties in the original complaint. Accordingly, this issue is without merit.

**CONCLUSION**

¶55.    We affirm in part and reverse in part the trial court's Order Granting Partial Summary Judgment entered on July 24, 2006, and the Amended Order entered on March 19, 2007. We affirm the dismissal without prejudice of Dr. Clark and Cleveland Medical Clinic, PLLC, for want of statutory notice of claim pursuant to Section 15-1-36(15). We reverse the trial court's dismissal with prejudice of all claims against the MTCA defendants, Cleveland Medical Alliance, LLP, and Dr. Steven Clark for his periods of employment with Cleveland Medical Alliance, LLP and Cleveland Medical Clinic, a service of Delta Regional Medical Center, based on our finding that the one-year statute of limitations should have been tolled upon the filing of the August 31, 2004, complaint until such time as the trial court issued its ruling in July 2006.

¶56.    We also affirm the Amended Order in part as to the dismissal with prejudice of all claims against Defendants Samuel Duff Austin, M.D.; Bennie Barnette Wright, Jr., M.D.; Estate of Barry Stephen Sullivan, M.D.; Cleveland Medical Clinic, Ltd.; and Cleveland Clinic, P.A.; as set forth in the third amended complaint, because the statute of limitations for both the MTCA and Section 15-1-36 had run prior to Price filing the June 26, 2006, third amended complaint. Finally, this Court affirms the trial court's Order Granting Summary Judgment entered on August 20, 2007, in favor of Dr. Steven Clark and Cleveland Medical Clinic, PLLC, dismissing all remaining claims in Price's third amended complaint for

34

conduct that occurred between October 1, 2003, and January 31, 2004, on the basis that Price's expert was unable to establish any genuine issue of material fact that Dr. Steven Clark had breached the standard of care during this time period. Price failed to make any argument before this Court that any issue of material fact existed under Rule 56(c) of the Mississippi Rules of Civil Procedure that Dr. Clark and Cleveland Medical Clinic, PLLC, had deviated from the standard of care during the time period of October 1, 2003, through January 31, 2004.

¶57. The cross-appeal by Dr. Clark and Cleveland Medical Clinic, PLLC, of the trial court's August 28, 2006, order denying their motion to amend judgment and the March 19, 2007, amended order granting summary judgment is without merit in light of our holding that the trial court did not err in dismissing the Section 15-1-36 claims without prejudice. Accordingly, we affirm the August 2006 and March 2007 orders in part as to this issue.

¶58. As to the cross-appeal by Drs. Austin, Wright, and Sullivan, Cleveland Medical Clinic, Ltd., and Cleveland Medical P.A. of the July 21, 2006, Order Granting Motion to Amend, we find that the trial court's permitting Price to file the third amended complaint was not an abuse of discretion inasmuch as the trial court's order granting leave to amend comported with Rule 15(a) of the Mississippi Rules of Civil Procedure. Accordingly, on cross-appeal we affirm the trial court's July 2006 order.

¶59. **ON DIRECT APPEAL: AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ON CROSS-APPEAL: AFFIRMED.**

**WALLER, C.J., DICKINSON, LAMAR AND PIERCE, JJ., CONCUR. DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY**

35

**WALLER, C.J., CARLSON, P.J., AND LAMAR, J. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.; RANDOLPH, J., JOINS IN PART. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**DICKINSON, JUSTICE, CONCURRING:**

¶60. Although I agree with – and fully join – the majority, I write separately to address Justice Randolph's concerns with Justice Carlson's disposition of Issue III.

¶61. Justice Randolph correctly recites the views I expressed on behalf of the Court in *Wimley v. Reid*, 991 So. 2d 135 (Miss. 2008), and I do not today retreat from those views, nor do I find in today's majority any view to the contrary. Indeed, neither *Wimley* nor the statutes at issue in this case mention the tolling of the statute of limitations, and I am of the opinion that Justice Carlson's excellent analysis of the issue is correct.

¶62. To be clear, I continue to firmly believe this Court must apply statutes as they are written. And to that end, I reaffirm my support for the proposition that – for *quantitative* statutory mandates – the term "substantial compliance" is a non sequitur,[4] employed primarily by two well-meaning but (in my view) misguided schools of judicial philosophy: those who mistakenly believe they can read the mind of the Legislature (as if it had only one mind); and those who interpret statutes as they think they *should have* been written.

---

[4]Indeed, I also am of the opinion that "substantial compliance" is a non sequitur in any context (one either complies, or one doesn't). I have, however, yielded to the populist affection for the term, but only as it applies to qualitative requirements. A better (and more accurate) phrase, in my opinion, would be "the information provided is substantial enough to comply with the statute's requirement."

¶63. It is not my intent to criticize those who hold the view that a statute's perceived purpose may trump the statute's precise language – I just disagree with them. Thus, in my view, where a statute specifically and unambiguously declares that a claimant must wait ninety days to file suit (a quantitative requirement), the claimant must wait ninety days, regardless of whether the assumed *purposes* of the statute may have been earlier met.

¶64. But strict compliance with statutory time limits does not require that we read into a statute provisions which are not there. I am convinced that suits filed prior to the expiration of the statutory notice periods should be dismissed, but I am prepared to go no further. That is to say, I will not agree to read into the Mississippi Tort Claims Act, or the pre-suit notice requirement of Section 15-1-36(15), a prohibition against tolling the statute of limitations for the period of time the suit was pending, notwithstanding the plaintiff's failure to give proper notice. If the Legislature wishes to eliminate tolling of the statute of limitations, it is free to enact a statute of repose. I see no reason whatsoever, under the facts of this case, to depart from the general rule that the filing of a complaint tolls the statute of limitations.

**WALLER, C.J., CARLSON, P.J., AND LAMAR, J., JOIN THIS OPINION**.

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶65. In today's opinion, the majority of this Court finds that Price failed to substantially comply with the statutory requirements of Mississippi Code Section 11-46-11(1)-(2) (Rev. 2002), which is part of the Mississippi Tort Claims Act (MTCA), and Mississippi Code Section 15-1-36(15) (Rev. 2003). I have previously stated my disagreement with this Court's insistence on strictly applying the requirements set out in Sections 11-46-11(1) and 15-1-

37

36(15). *See* ***Bunton v. King***, 995 So. 2d 694, 697-98 (Miss. 2008) (Graves, J., dissenting); ***Arceo v. Tolliver***, 949 So. 2d 691, 698-704 (Miss. 2006) (Graves, J., dissenting). In ***Fairley v. George County***, 871 So. 2d 713, 718-28 (Miss. 2004) (Easley, J., concurring), I joined Justice Easley's opinion, in which he concurred in result only, finding that the plaintiff had substantially complied with Section 11-46-11(2), though the majority held that she had not complied. In light of the facts of this case, the legal precedent, and the rationale behind the statutory requirements, I am compelled to restate my disagreement with this Court's application of the requirements set out in Sections 11-46-11(1)-(2) and 15-1-36(15).

## I.

¶66.    In this case, the majority recognizes that this Court held in ***Lee v. Memorial Hospital at Gulfport***, 999 So. 2d 1263, 1266-67 (Miss. 2008), that only substantial compliance is required with respect to the requirements set out in Section 11-46-11(2). Maj. Op. ¶ 20. However, the majority finds that the notices of claim sent by Nina Price (Price) failed to substantially comply with Section 11-46-11(2). Maj. Op. ¶ 22. Because the notices of claim do substantially comply with the requirements in Section 11-46-11(2), I respectfully dissent.

¶67.    Section 11-46-11(2) requires that a notice of claim set out seven categories of information: 1) the circumstances which brought about the injury; 2) the extent of the injury; 3) the time and place the injury occurred; 4) the names of all persons known to be involved; 5) the amount of money damages sought; 6) the residence of the person making the claim at the time of the injury; and 7) the residence of the person making the claim at the time the notice is filed. Miss. Code Ann. § 11-46-11(2).

38

¶68.     The notices of claim at issue, which were dated August 30, 2004, and were delivered

via certified mail, stated:

>    I am writing this letter as an official notice that a formal complaint will be filed against you on behalf of our client, Albert Bruce Price, Jr., who has suffered injuries and sustained damages as a result of the negligent medical treatment that he received at your facility located in Cleveland, Mississippi.

>    Mr. Price had been a patient of yours and your predecessors for well over twenty years. Beginning in 2001, Mr. Price began weakening especially in his lower extremities. His health continually worsened over the next three years and although he was partaking in physical therapy and occupational therapy, he was not improving. He slowly went from losing his balance, to needing a cane, to needing a walker, to needing a wheelchair, to basically being bed bound. At no time was an MRI or CT scan performed on Mr. Price to determine any potential neurological problems. In the end when the MRI and/or CT scan were executed, a rather large pituitary tumor which had been growing for several years was discovered. After consulting with specialists from several states, the family and Mr. Price learned that not only was the tumor inoperable but that radiation was not an option. Less than two weeks after his last consultation with a neurologist concerning his health, Mr. Price died on or about August 14, 2004.

>    Mr. Price's family has been forced to alter their lifestyle due to the deterioration of his health and his subsequent death. Mr. Price had to limit his former daily activities. Due to his physical condition caused by the pituitary tumor, Mr. Price could no longer engage in his usual day-to-day activities once exhibited such as: walking, playing with his grandchildren, driving, working on his cars and entertaining crowds of people and his family with his talent of playing the keyboard, singing and just plain rockin' n' rollin'. Prior to his health problems caused by the undiagnosed tumor, Mr. Price was very involved in the community and with his family.

>    For the foregoing reasons, we will be filing a complaint on behalf of our client for past, present and future medical expenses, pain and suffering, mental and emotional distress, and loss of society. However, if you are willing to discuss the settlement of this matter prior to the initiation of a lawsuit, please do not hesitate to contact us in a timely manner. If we do not hear from you, we will proceed by filing a complaint against you on behalf of our client.

¶69. The majority concludes that the notices of claim failed to substantially comply with Section 11-46-11(2). Maj. Op. ¶ 22. I disagree with this conclusion because the notices of claim provided sufficient notice to the defendants of the claim and they provided all seven categories of information required pursuant to Section 11-46-11(2).

***The Circumstances Which Brought About the Injury***

¶70. The notices of claim clearly described the circumstances which brought about Albert Price's injury. The first sentence of the notices of claim stated that he suffered injuries as a result of negligent medical treatment at the defendants' medical facilities. The notices of claim further pointed out that Albert Price had been a patient of the defendants for more than twenty years and that, despite the fact that his condition began worsening in 2001, "[a]t no time was an MRI or CT scan performed on Mr. Price to determine any potential neurological problems." As a consequence, the notices stated, Albert Price's tumor was not discovered until it was inoperable and unresponsive to radiation therapy. Thus, the notices of claim met the first requirement set out in Section 11-46-11(2) by adequately describing the circumstances which brought about the injury.

***The Extent of the Injury***

¶71. As for the extent of the injury, the notices of claim made abundantly clear that the claim was that Albert Price had suffered from the deterioration of his physical condition, which ultimately led to his death. The notices described the progression of his loss of mobility: "[h]e slowly went from losing his balance, to needing a cane, to needing a walker, to needing a wheelchair, to basically being bed bound." The third paragraph of the notices

40

of claim provided further details regarding the specific ways in which Albert Price's worsening physical condition caused him injury. Therefore, the second category of information set out in Section 11-46-11(2) was also provided in the notices of claim.

***The Time and Place the Injury Occurred***

¶72. The notices of claim specifically stated that Albert Price "suffered injuries and sustained damages as a result of the negligent medical treatment that he received *at your facility located in Cleveland, Mississippi*." (Emphasis added.) Thus, there is no question that the claim was that the injury occurred at the defendants' medical facilities in Cleveland, Mississippi. The notices of claim also stated that Albert Bruce Price, Jr. was a patient at the defendants' medical facilities for more than twenty years. Price's primary allegation was that the defendants should have diagnosed the pituitary tumor that caused Albert Price's death before the tumor became inoperable and unresponsive to radiation therapy. The notices of claim clearly stated that the tumor "had been growing for several years." Therefore, the time the injury occurred spanned the period of time from the formation of the tumor until Albert Price's death. The notices of claim contained sufficient information for the defendants to draw this common-sense conclusion. In addition, the notices also stated that Albert Price's health began to deteriorate in 2001. Thus, contrary to the majority's conclusion, the notices of claim sufficiently identified the time the injury occurred. Maj. Op. ¶ 21.

***The Names of All Persons Known to be Involved***

¶73. Section 11-46-11(2) only requires that a notice of claim specify "the names of all persons *known* to be involved." Miss. Code Ann. § 11-46-11(2) (emphasis added). This

41

Court underscored in *Lee* that only "all persons *known* to be involved" need to be identified in a notice of claim. *Lee*, 999 So. 2d at 1267. If Price did not know the identity of all persons involved, then Section 11-46-11(2) did not require that she provide their names since she did not know all persons who were involved. *See* Miss. Code Ann. § 11-46-11(2). I note that the defendants easily could have consulted Albert Price's medical file and their records to determine which of its employees were involved in his treatment. Therefore, I disagree with the majority's conclusion that Price failed to comply with Section 11-46-11(2) because "there also was no mention of the names of the persons involved." Maj. Op. ¶ 21.

***The Amount of Money Damages Sought***

¶74. Although the notices of claim did not specify the amount of money damages sought, they did include a list of the types of damages Price sought. Presumably, the Legislature included this requirement in Section 11-46-11(2) so that defendants would have more information regarding the nature of the claim in order to give them a general sense of whether settlement is desirable, and if so, the range of potential settlement amounts. Listing the various types of damages claimed adequately serves this purpose. Since Price provided a detailed list of the types of damages sought, she substantially complied with this statutory requirement. Therefore, I disagree with the majority's finding that the notices of claim did not satisfy this requirement set out in Section 11-46-11(2). Maj. Op. ¶ 21.

¶75. I am compelled to add, however, that I find the mere existence of this requirement, and this Court's enforcement of it, to be highly problematic. Requiring claimants to indicate the amount of damages sought in their notice of claim serves no purpose other than to create yet

42

another hurdle in an effort to thwart viable claims against governmental entities and medical providers. Mississippi Rule of Civil Procedure 8(a) does not require plaintiffs to specify a monetary amount of damages in a pleading setting forth a claim for relief and only requires that a plaintiff include "a demand for judgment for the relief to which he deems himself entitled." Miss. R. Civ. P. 8(a)(2). More pertinent to this case is the fact that a plaintiff pursuing a negligence claim against medical providers is statutorily prohibited from specifying a damages amount in his or her complaint or counterclaim. Miss. Code Ann. § 11-1-59 (Rev. 2002). Section 11-1-59 states, in relevant part:

> In any action at law against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor to recover damages based upon a professional negligence theory, *the complaint or counterclaim shall not specify the amount of damages claimed*, but shall only state that the damages claimed are within the jurisdictional limits of the court to which the pleadings are addressed . . . .

Miss. Code Ann. § 11-1-59 (emphasis added). Thus, individuals pursuing claims against providers for medical negligence are not even permitted to specify the amount of money damages sought in their complaint or counterclaim, but are *required* to specify the amount of money damages sought in their notice of claim. This is absurd. There is no rational explanation for why *claimants* must specify a damages amount in their notice of claim when they are not permitted, much less required, to do so in their formal complaint or counterclaim.

¶76. Furthermore, the exact amount of money damages sought may be very difficult to calculate and may, in fact, require consultation with experts. Thus, it can be extremely burdensome for claimants to specify an amount of damages in their notice of claim –

43

especially given the fact that they need not determine a specific damages amount to include in their complaint or counterclaim. In the instant case, Price is seeking damages for, inter alia, pain and suffering, mental and emotional distress, and loss of society. It would have been extraordinarily difficult for her to determine a specific amount of money damages for these types of damages in her notices of claim, which were required to be sent before litigation was commenced, and which were sent only approximately two weeks after her husband's death.

***The Residence of the Person Making the Claim at the Time of the Injury and at the Time the Notice is Filed***

¶77. The majority finds that the notices of claim did not include the claimant's residence at the time of the injury or at the time the notice is filed. Maj. Op. ¶ 21. In all likelihood, Section 11-46-11(2) requires that a notice of claim include the claimant's address at the time of the injury is so that defendants can identify the claimant. In this case, Albert Price had been a patient at the defendants' facilities for more than twenty years. Also, his full name – Albert Bruce Price, Jr. – was provided in bold-face type in the subject line of the notices of claim and in the first sentence of the substance of the notices. His full name was more than adequate in assisting the defendants in identifying him. Furthermore, Albert Price's address at the time of injury was most likely provided to the defendants at least once during the twenty-year period during which they treated him and was readily available in the defendants' records. The defendants were put on sufficient notice of which of their patients was pursuing this claim against them.

¶78.   As for the requirement that a notice of claim include the claimant's address at the time the notice is filed, this information is most likely required so that defendants can contact the claimant in an effort to investigate or settle the claim.  Here, Price was making a claim through counsel, whose office address, office phone number, and office website were provided in the notices of claim.  Notably, it would have been a violation of Mississippi Rule of Professional Conduct 4.2[5] for a lawyer representing a defendant to attempt to contact a claimant directly when it is known that the claimant is represented by counsel.  *See* Miss. R. Prof'l Conduct 4.2.  Accordingly, the notices of claim invited the defendants to "contact us," clearly referring to counsel, whose signature followed shortly thereafter, and his law firm. The notices of claim provided sufficient information to the defendants such that they could have identified Albert Price and contacted Price's counsel regarding the claim.

¶79.   This conclusion is consistent with this Court's prior case law.  In ***Thornburg v. Magnolia Regional Health Center***, 741 So. 2d 220, 223 (Miss. 1999), this Court addressed the defendant's argument that the plaintiff's notice of claim was deficient for failure to provide her address.  This Court stated that

> notwithstanding Thornburg's failure to include her address in her letter, her notice letter nevertheless informed Magnolia of the substance of her claim and provided Magnolia with sufficient information to conduct a proper investigation. . . . [T]he letter provided the address of the attorney handling the

---

[5] Rule 4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."  Miss. R. Prof'l Conduct 4.2.

claim, and Magnolia could have presumably obtained the information regarding Thornburg's residence by conducting a brief investigation.

*Id.* In ***Powell v. City of Pascagoula***, 752 So. 2d 999, 1005 (Miss. 1999), this Court found that the plaintiff had substantially complied with Section 11-46-11(2) despite her failure to include her address, stating that:

> The City suffered no actual prejudice as a result of Powell's failure to include her own address, where she was represented by an attorney at the time and his address was included. Furthermore, the City was on actual notice of Powell's address on the date of the incident, in that the police officer who reported the incident included Powell's address on the Uniform Accident Report.
> Because Powell's Notice bore the address of her attorney, we find this to be substantial compliance with the statute.

¶80.   As this Court recognized in both ***Thornburg*** and ***Powell***, as a practical matter, it is inconsequential that a claimant failed to include his or her residence at the time of the injury and the time the notice is filed when the defendants can easily access the claimant's residence at the time of the injury and can contact the claimant's attorney, whose contact information is provided.

¶81.   In the instant case, it is evident that Price provided all seven categories of information. The information provided in the notice was sufficient to meet the purpose of the statute by enabling the defendants to investigate and evaluate Price's claim. Therefore, I would find that Price's notices of claim substantially complied with Section 11-46-11(2). I note that this Court found substantial compliance in ***Reaves ex rel. Rouse v. Randall***, 729 So. 2d 1237, 1240 (Miss. 1999), where the notice of claim sent to the governmental entity included only the persons involved in the accident, when the accident occurred, where the accident occurred,

and what vehicles were involved. In *Carr v. Town of Shubuta*, 733 So. 2d 261, 263 (Miss. 1999), this Court stated:

> The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, *we see no need to endorse a policy which renders the statute a trap for the unwary* where such purpose has in fact been satisfied.
>
> Thus, a notice is sufficient if it substantially complies with the content requirements of the statute. What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination. In general, a notice that is filed within the [requisite] period, informs the municipality of the claimant's intent to make a claim and *contains sufficient information which reasonable [sic] affords the municipality an opportunity to promptly investigate the claim* satisfies the purpose of the statute and will be held to substantially comply with it.

*Id.* at 263 (emphasis added). This Court further stated that, "[e]ven though this Court now finds substantial compliance to be sufficient, we stress that substantial compliance is not the same as, nor a substitute for non-compliance." *Id.* at 265. This Court has since unfairly and unreasonably cited that statement as support for finding noncompliance where claimants have, in fact, substantially complied. *See, e.g.*, *Parker v. Harrison County Bd. of Supervisors*, 987 So. 2d 435 (Miss. 2008); *Fairley v. George County*, 871 So. 2d 713 (Miss. 2004); *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970 (Miss. 2004).

¶82.    I write today to denounce the manipulation of "substantial compliance" into a mere judicial illusion and to implore the application of the statute as intended – to provide notice of a claim – and not to prohibit the pursuit of claims. Based on the statutory requirements and the applicable caselaw, I would find that Price substantially complied with the notice requirements set out in Section 11-46-11(2).

47

## II.

¶83.   I also write to express my disagreement with the majority's reliance on *University of Mississippi Medical Center v. Easterling*, 928 So. 2d 815 (Miss. 2006), and *Pitalo v. GPCH-GP, Inc.*, 933 So. 2d 927 (Miss. 2006), for the proposition that Mississippi Code Sections 11-46-11(1) and 15-1-36(15) should be strictly construed and applied.  Maj. Op. ¶¶ 16-19.

***The Ninety-Day-Notice Requirement***

¶84.   Mississippi Code Section 11-46-11(1), which is part of the Mississippi Tort Claims Act (MTCA), states, in relevant part:

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.

Miss. Code Ann. § 11-46-11(1).  Thus, Section 11-46-11(1) requires that, when suing a state entity, a plaintiff must file a notice of claim with the chief executive officer of the governmental entity ninety days prior to maintaining an action on a claim for injury.  Miss. Code Ann. § 11-46-11(1).[6]  This Court has long applied a substantial-compliance standard when reviewing cases involving the ninety-day-notice requirement.  *See, e.g.*, *Wright v. Quesnel*, 876 So. 2d 362, 366 (Miss. 2004); *Davis v. Hoss*, 869 So. 2d 397, 401-02 (Miss. 2004); *Jones ex rel. Jones v. Miss. Sch. for the Blind*, 758 So. 2d 428, 429 (Miss. 2000),

---

[6] Although Section 11-46-11 was revised in 1999, the language regarding the ninety-day-notice requirement remains unaltered from the pre-1999 version of Section 11-46-11. *See* Miss. Code Ann. § 11-46-11 (Rev. 1998).

*overruled by Easterling*, 928 So. 2d 815; *Jackson v. City of Wiggins*, 760 So. 2d 694, 695-96 (Miss. 2000), *overruled by Easterling*, 928 So. 2d 815; *Leflore County v. Givens*, 754 So. 2d 1223, 1232 (Miss. 2000), *overruled by Easterling*, 928 So. 2d 815; *Jackson v. City of Booneville*, 738 So. 2d 1241, 1246 (Miss. 1999), *overruled by Easterling*, 928 So. 2d 815; *City of Pascagoula v. Tomlinson*, 741 So. 2d 224, 226-27 (Miss. 1999), *overruled by Easterling*, 928 So. 2d 815. This Court has also long held that a stay for the remainder of the ninety-day period is the sole remedy available to a defendant when the plaintiff fails to substantially comply with the ninety-day-notice requirement. *See, e.g.*, *Jones*, 758 So. 2d at 429 (stating that a stay was the defendant's sole remedy for the plaintiff's failure to comply with the ninety-day waiting period); *City of Wiggins*, 760 So. 2d at 696 (same); *City of Booneville*, 738 So. 2d at 1246 (finding that the proper remedy for failure to comply with the ninety-day waiting period is a stay); *Tomlinson*, 741 So. 2d at 228 (same).

¶85.    It was not until *Davis* that a majority of this Court abandoned its earlier position regarding the remedy for noncompliance with the ninety-day-notice requirement. *Davis*, 869 So. 2d at 401-02. And it was not until *Easterling* that a majority of this Court decided, in a drastic departure from the legal precedent, to declare that the ninety-day-notice requirement would be strictly enforced. *Easterling*, 928 So. 2d 815, 819-20 (Miss. 2006).

¶86.    The majority opinion in *Easterling* is rife with incoherence and inconsistency, which becomes especially clear when it is considered in the context of the relevant precedent and Section 11-46-11(1). The *Easterling* majority cited *Davis* and *Wright* in an attempt to

49

demonstrate that strict compliance was consistent with the legal precedent. *Id.* at 818-20. However, both *Davis* and *Wright* applied a substantial-compliance standard to the ninety-day-notice requirement. *Davis*, 869 So. 2d at 401-02; *Wright*, 876 So. 2d at 366. Furthermore, the majority opinions in *Davis* and *Wright* were themselves deviations from this Court's caselaw establishing that a stay is the sole remedy for a plaintiff's failure to substantially comply with the ninety-day-notice requirement. *See, e.g.*, *Jones*, 758 So. 2d at 429; *City of Wiggins*, 760 So. 2d at 696; *City of Booneville*, 738 So. 2d at 1246; *Tomlinson*, 741 So. 2d at 228. The majorities in *Davis* and *Wright* found that the plaintiffs had not substantially complied with the ninety-day-notice requirement because they had not complied at all. *Davis*, 869 So. 2d at 401-02; *Wright*, 876 So. 2d at 366. The majorities then set out a new remedy for defendants when plaintiffs fail to comply *at all* with the ninety-day-notice requirement – dismissal of the case. *Davis*, 869 So. 2d at 401-02; *Wright*, 876 So. 2d at 366.

¶87.    Even more troubling is that, in order to support its abrupt shift from substantial compliance to strict compliance, the *Easterling* majority mischaracterized what had been set out in *Davis* and *Wright*. *Easterling*, 928 So. 2d at 818. The *Easterling* majority claimed that "in 2004, this Court announced in *Davis*, 869 So.[]2d at 402, [that] it was no longer the defendant's duty to request a stay or face a waiver of the ninety days when the plaintiff failed to comply with the statutory notice period." *Id.* However, the majority in *Davis* never stated that it was no longer the defendant's duty to request a stay for the ninety-day period when the plaintiff failed to comply with the statutory notice period. *See Davis*, 869 So. 2d at 401-02.

50

In fact, the majority in *Davis* never addressed whether or not the defendants should have requested a stay. *Davis*, 869 So. 2d at 401-02. The *Davis* majority found that the plaintiff failed to substantially comply with the ninety-day-notice requirement by filing the notice of claim on the same day as the complaint. *Id.* at 402. The majority then concluded that the plaintiff had failed to comply *at all* with the ninety-day-notice requirement, clearly stating that "'substantial compliance is not the same as, nor a substitute for, non compliance.'" *Davis*, 869 So. 2d at 402 (quoting *Carr v. Town of Shubuta*, 733 So. 2d 261, 265 (Miss. 1999)). The *Easterling* majority also cited *Wright* in support of applying a strict-compliance standard, but failed to mention that the majority in *Wright* had also applied a substantial-compliance standard to the ninety-day-notice requirement. *Easterling*, 928 So. 2d at 818-19; *Wright*, 876 So. 2d at 366.

¶88.    The *Easterling* majority went on to state that "[t]here is no doubt the language of *Davis* and *Wright* is in conflict with our prior rulings in which we have called for the defendant to request a stay of the proceedings." *Easterling*, 928 So. 2d at 819. As stated above, *Davis* and *Wright* *were* already a departure from the well-established policy that a stay was the sole remedy for noncompliance with the ninety-day-notice requirement. Nevertheless, this did not justify this Court's sudden adoption of a *strict-compliance standard* in *Easterling* in light of this Court's precedent. *See, e.g.*, *Wright*, 876 So. 2d at 366 (stating that this Court applies a substantial-compliance standard); *Davis*, 869 So. 2d at 401-02 (same); *Jones*, 758 So. 2d at 429 (same); *City of Wiggins*, 760 So. 2d at 696 (same); *Givens*, 754 So. 2d at 1231 (same);

51

*City of Booneville*, 738 So. 2d at 1243-44, 1246 (same); *Tomlinson*, 741 So. 2d at 226-27 (same). The *Easterling* majority claimed that *Davis* and *Wright* "served to shift the responsibility to correct the plaintiff's failure to follow the ninety-day notice requirement from the defendant to the plaintiff," although it was forced to concede that this was "not explicitly stated in *Davis* and *Wright*." *Easterling*, 928 So. 2d at 819.

¶89. The *Easterling* majority also stated that "[i]n order to make it perfectly clear to all that strict compliance is required, as stated in *Davis* and *Wright*, we hereby overrule *Tomlinson* and its progeny." *Easterling*, 928 So. 2d at 819-20. The reason the majority had to make this "perfectly clear to all" was because it was not at all clear that the majority opinions in *Davis* and *Wright* stated what the *Easterling* majority claimed they stated. Again, neither *Davis* nor *Wright* applied a strict-compliance standard to the ninety-day-notice requirement. *Davis*, 869 So. 2d at 401-02; *Wright*, 876 So. 2d at 366. Thus, it was only by misrepresenting what was stated in prior decisions that the *Easterling* majority was able to justify its leap from substantial compliance to strict compliance.

¶90. This Court has noted before that the purpose of the ninety-day-notice requirement is to notify the defendant of the plaintiff's claim so that the defendant can use the ninety days to investigate the claim and pursue any avenues available to settle the dispute before the plaintiff seeks formal legal redress in the courts. *See, e.g.*, *City of Booneville*, 738 So. 2d at 1243-44; *Givens*, 754 So. 2d at 1231. This Court has held:

> The purpose of the [Mississippi Tort Claims] Act is to insure that governmental boards, commissioners, and agencies are informed of claims against them. Such notice encourages entities to take corrective action as soon

as possible when necessary; encourages pre-litigation settlement of claims; and encourages more responsibility by these agencies. . . .

In order to carry out the legislative purpose of providing relief to injured citizens, we hold that substantial compliance with the notice provisions of the Act is sufficient.

*City of Booneville*, 738 So. 2d at 1243-44 (quoting *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237, 1240 (Miss. 1999)). As noted above in Section I, this Court has also stated:

The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied. Thus, a notice is sufficient if it substantially complies with the content requirements of the statute.

*Givens*, 754 So. 2d at 1231 (quoting *Carr*, 733 So. 2d at 263). If the defendant decides not to take advantage of the ninety-day period to investigate the plaintiff's claim and pursue settlement options, then there is no logical reason for delaying the formal initiation of the lawsuit in the courts. It does not promote judicial economy to enforce a ninety-day waiting period and deny the plaintiff the possibility of redress for ninety days when neither party wishes to wait for the case to proceed. That is why the most sensible penalty for failing to comply with the ninety-day-notice requirement is for the court to grant a stay for the remainder of the ninety-day period, at the defendant's request. If the defendant does not wish to have the benefit of the full ninety-day period before the plaintiff files suit in court, then the plaintiff should be allowed to file a formal complaint before the ninety-day period expires, and the defendant should be barred from objecting to the plaintiff's noncompliance with the ninety-day-notice requirement.

¶91.    Given our legal precedent and the most rational interpretation of Section 11-46-11(1), it becomes clear that *Easterling* was an aberration in our jurisprudence regarding the ninety-day-notice requirement.  The ninety-day-notice requirement in Section 11-46-11(1) should not be reviewed with a strict-compliance standard.  To the extent Section 11-46-11(1) requires strict compliance with the ninety-day-notice requirement, it unconstitutionally deprives plaintiffs of their right to seek redress for their legal claims in our courts.  *See* Miss. Const. art. 3, § 24; *see Bunton v. King*, 995 So. 2d 694, 697-98 (Miss. 2008) (Graves, J., dissenting). For this Court to strictly construe and then strictly apply the requirement that plaintiffs with claims against a specific set of defendants – governmental entities – give ninety days' notice of their claims unfairly protects these defendants and unfairly burdens these plaintiffs by hindering their ability to pursue their claims in court.  It adds yet another hurdle to the process of seeking legal redress against this separate class of defendants.  This is unconstitutional. *See* Miss. Const. art. 3, § 24; *see also Bunton*, 995 So. 2d at 697-98 (Graves, J., dissenting). To the extent that Section 11-46-11(1) does not require strict compliance, this Court's application of a strict-compliance standard is unconstitutional for the same reasons.

***The Sixty-Day-Notice Requirement***

¶92.    Mississippi Code Section 15-1-36(15) states, in relevant part: "No action based upon the health care provider's professional negligence may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action." Miss. Code Ann. § 15-1-36(15).  Thus, Section 11-46-11(1) requires that when suing a health care provider, a plaintiff must give the health-care provider written notice of his or her

54

intention to begin an action for professional negligence sixty days prior to initiating an action on a claim for injury. Miss. Code Ann. § 15-1-36(15).

¶93. I have previously expressed my disagreement with this Court's strict construction and application of the sixty-day-notice requirement in Section 15-1-36(15) in *Arceo v. Tolliver*, 949 So. 2d 691, 698-704 (Miss. 2006) (Graves, J., dissenting), and I hereby incorporate those arguments. As I stated in that opinion, it is unconstitutional for this Court to strictly enforce the requirement that plaintiffs filing lawsuits against a particular class of defendants – medical providers – provide written notice of their claims and then to dismiss their claims, regardless of viability, if they fail to wait sixty days before filing a complaint. *See* Miss. Const. art. 3, § 24; *see also Arceo*, 949 So. 2d at 698-704 (Graves, J., dissenting).

¶94. For all the reasons set out above, I respectfully dissent.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION. RANDOLPH, J., JOINS THIS OPINION IN PART.**

**RANDOLPH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶95. Regarding Issue I, I agree with the Majority's conclusion that "the trial court did not err in its finding that the notice requirements are clear, must be strictly applied, and must be given retroactive effect."[7] (Majority Opinion at ¶ 19). However, as to Issue II, I join Section

---

[7]However, I would note that within Issue I, the trial court erroneously found that "Price could have avoided being subject to the September 1, 2004, cap on damages only if she had filed sixty days after her husband's diagnosis and had not waited to file until after his death." (Majority Opinion at ¶ 15). *University of Mississippi Medical Center v. McGee*, 999 So. 2d 837 (Miss. 2008), provides that:

I of Presiding Justice Graves's dissenting opinion which concludes that Price "substantially complied" with the statutory requirements of Mississippi Code Section 11-46-11(2), as we addressed in *Lee v. Memorial Hospital at Gulfport*, 999 So. 2d 1263, 1266-67 (Miss. 2008).[8]

---

> [t]his Court recently has explained when the statute of limitations begins to run for survival claims and wrongful-death claims under the MTCA. *Caves v. Yarbrough*, No. 2006-CA-01857-SCT at 6, (Miss. 2008). In a suit under the wrongful-death statute, there may be several different kinds of claims, and each kind of claim is subject to its own statute of limitations. The limitation period begins to run on the earliest date all of the elements of a tort are present. *Caves*, No. 2006-CA-01857-SCT at 8-9, 11. . . . In summary, "the MTCA's one-year statute of limitations begins to run when the claimant knows, or by exercise of reasonable diligence should know, of both the damage or injury, and the act or omission which proximately caused it." *Caves*, No. 2006-CA-01857-SCT at 23.
>
> . . .
>
> However, *for a wrongful-death claim brought under the MTCA, the tort is not complete until the final element of the tort manifests and the cause of action is known. At the earliest, this is the date of death*. *Caves*, No. 2006-CA-01857-SCT at 23.

*McGee*, 999 So. 2d at 840-41 (emphasis added). The trial court found that the statute of limitations began to run on April 9, 2004, despite the presence of wrongful-death claims. Accordingly, I would remand for a new computation of the statute of limitations on such wrongful-death claims.

[8]While I agree with Presiding Justice Graves's Section I conclusion, I reject portions of the reasoning employed, including, but not limited to, his opinion that the legislative purpose is "absurd," without "rational explanation," and "extremely burdensome" upon the parties. (Dissenting Opinion at ¶¶ 75-76). Although some persons may agree that numerous statutes passed by the Legislature are without rational explanation and/or burdensome on the citizens they affect, it is not the prerogative of this Court to refuse enforcement of laws which it deems unwise. *See Thomas v. Warden*, 999 So. 2d 842, 846 (Miss. 2008) ("[o]ur constitutional duty is to interpret and apply the law as it is written, not as we think it might have been more fairly written.").

Having a different opinion regarding Issue III, I join neither the Majority Opinion, nor Section II of Presiding Justice Graves's dissenting opinion, as discussed *infra*. As to the remaining issues, I agree with the Majority. Accordingly, I respectfully concur in part and dissent in part.

¶96.    Not long ago, via tort reform, the Legislature wrought significant changes affecting suits against the sovereign and medical providers. The implemented statutes were enacted after considerable and heated debate in the public realm and within the Legislature. The appropriate constitutional body, the Legislature, determined their adoption was in the best interests of the citizens of this State. The resulting legislation included the pre-suit notice requirements of Mississippi Code Sections 11-46-11(1) and 15-1-36(15), which are at issue today. *See* Miss. Code Ann. § 11-46-11(1) (Rev. 2002); Miss. Code Ann. § 15-1-36(15) (Rev. 2003). The effect of today's decision is a judicial nullification of those pre-suit notice requirements[9] and a repudiation of decisions of this Court requiring compliance therewith.

¶97.    Less than one year ago, in ***Wimley v. Reid***, 991 So. 2d 135 (Miss. 2008), this Court firmly proclaimed that "we guard . . . diligently the Legislature's prerogative to set forth in legislation whatever substantive, pre-suit requirements for causes of action, and prerequisites to filing suit, it deems appropriate." ***Id***. at 139. This Court elaborated further that:

---

[9]*See* Miss. Const. art. 1, §1 ("[t]he powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit: those which are legislative to one, those which are judicial to another, and those which are executive to another."); Miss. Const. art 1, § 2 ("[n]o person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.").

57

pre-suit requirements are clearly within the purview of the Legislature, and do not encroach upon this Court's rule-making responsibility. Indeed, we consistently have held that *the Legislature has authority to establish presuit requirements as a condition precedent to filing particular kinds of lawsuits.* For instance, the Legislature promulgated, and we have enforced, Section 11-46-11(1), which requires that notice be provided to the putative defendant prior to bringing a claim under the Mississippi Tort Claims Act. Miss. Code Ann. § 11-46-11(1) (Rev. 2002). Similarly, the Legislature promulgated, and we have enforced, Section 15-1-36(15)'s requirement of notice prior to bringing a medical-negligence claim. Miss. Code Ann. § 15-1-36(15) (Rev. 2003); *see e.g. Arceo v. Tolliver*, 949 So. 2d 691, 693-97 (Miss. 2006) (strictly construing and applying statute which requires plaintiffs to give notice *before commencing* a medical negligence action).

*Wimley*, 991 So. 2d at 139 (emphasis added). *See also Thomas*, 999 So. 2d at 847 (a Section 15-1-36(15) case in which this Court avowed that "[t]he Legislature's authority to make law gives way to this Court's rule-making authority when the suit is filed, not before"); *Forest Hill Nursing Ctr. v. Brister*, 992 So. 2d 1179, 1189 (Miss. 2008) ("we clearly acknowledged in *Wimley* the Legislature's constitutional authority to set out *pre-suit requirements . . . .*") (emphasis added).

¶98.    Regarding Section 11-46-11(1), this Court has declared that, following notice, the plaintiff must wait the requisite ninety days prior to filing suit. *See Parker v. Harrison County Bd. of Supervisors*, 987 So. 2d 435, 441 (Miss. 2008) (strict compliance with the ninety-day-*notice* provision of Section 11-46-11(1) is *required*); *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 41 (Miss. 2007) ("[t]he [MTCA] gives a governmental entity defendant ninety days from the filing of a notice of claim to consider the claim *before a lawsuit can be maintained*") (emphasis added); *S. Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1259 (Miss. 2006) ("[t]he MTCA specifically requires the plaintiff to wait ninety days

58

after providing notice *before maintaining* an action against a governmental entity . . . .") (emphasis added); *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006) (this Court has a "constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation").

¶99.    As to Section 15-1-36(15), its sixty-day-notice requirement likewise has been strictly construed by this Court. *See Williams v. Skelton*, 6 So. 3d 428, 430 (Miss. 2009) (quoting *Williams v. Skelton*, 6 So. 3d 433, 435 (Miss. Ct. App. 2008)) ("[w]e agree with the Court of Appeals that this Court 'has required strict compliance with the mandates of Mississippi Code Annotated Section 15-1-36 such that *failure to satisfy* the *pre-suit notice requirement mandates dismissal* of the plaintiff's complaint'") (emphasis added); *Thomas*, 999 So. 2d at 847 ("[b]ecause Thomas failed to provide a sixty-day notice as required by Section 15-1-36(15), we must affirm the trial court's dismissal of the complaint"); *Brister*, 992 So. 2d at 1188 ("Mississippi Code Annotated Section 15-1-36(15) clearly states that *no action may be begun* without prior notice.") (emphasis added); *Saul v. Jenkins*, 963 So. 2d 552, 554 (Miss. 2007) ("Section 15-1-36(15) *requires* plaintiffs to provide sixty days' *notice* of intention *to commence an action* . . . .") (emphasis added); *Arceo*, 949 So. 2d at 694-97; *Pitalo v. GPCH-GP, Inc.*, 933 So. 2d 927, 929 (Miss. 2006) (Section 15-1-36(15) "requires that an *action* based on professional negligence of a health care provider *may not begin unless* the defendant has been *given* at least 60 days prior written *notice* of the intention to begin the action.") (emphasis added). Simply stated, "[w]hen drafting Miss. Code Ann. Section 15-1-36(15), the Legislature did not incorporate any given exceptions to this rule which would alleviate the

*prerequisite condition* of prior written *notice.*" ***Pitalo***, 933 So. 2d at 929 (emphasis added).

"Section 15-1-36(15)'s notice requirement is a *pre-suit prerequisite* to a *claimant's right to file suit.*" ***Thomas***, 999 So. 2d at 847 (emphasis added).

¶100. According to the Majority Opinion:

> no precedent is cited by either the trial court or the parties supporting the trial court's failure to give a tolling effect to the original complaint due to Price's failure to provide statutory notice.

(Majority Opinion at ¶ 27). Initially, I note that the "[f]ailure to cite relevant authority obviates the appellate court's obligation to review such issues." ***In re Smith***, 926 So. 2d 878, 886 (Miss. 2006) (quoting ***Byrom v. State***, 863 So. 2d 836, 863 (Miss. 2003)). Nonetheless, the Majority chooses to review this issue, citing ***Owens v. Mai***, 891 So. 2d 220 (Miss. 2005), which is irrelevant to the issues presented in this case. *See* ¶ 103 *infra*. In so doing, the Majority rejects the proposition that the legislatively-mandated pre-suit notice requirements of Mississippi Code Sections 11-46-11(1) and 15-1-36(15) constitute "a *condition precedent to filing* particular kinds of *lawsuits.*" ***Wimley***, 991 So. 2d at 139 (emphasis added). *See also* ***Thomas***, 999 So. 2d at 846 ("because the defendants in this case did not have 'sixty (60) days prior written notice of the intention to begin the action,' this *lawsuit* was *not lawfully filed*, and *it is of no legal effect*") (emphasis added); ***Easterling***, 928 So. 2d at 819 (absent the requisite notice, the complaint is deemed "prematurely filed . . . .").

¶101. In short, the right to sue heretofore has been conditioned upon fulfillment of the statutory notice requirement. "It is certainly an undisputable and invariable rule of law that a right of action must be complete when an action therefor is commenced . . . ." ***Crawford***

***Commercial Constructors, Inc. v. Marine Indust. Residential Insulation, Inc.***, 437 So. 2d 15, 16 (Miss. 1983) (quoting ***Georgia Pac. Ry. Co. v. Baird***, 76 Miss. 521, 24 So. 195, 196 (1898)). Thus, in the absence of satisfying the statutory notice requirement, no right of action exists and, therefore, no "duly filed"[10] or "duly commenced"[11] civil action exists, as presumptively declared by the Majority in the absence of authority or citation. While this Court previously has erroneously held that the MTCA's pre-suit notice requirements are jurisdictional, they are not merely "directive" either. ***Jackson v. Lumpkin***, 697 So. 2d 1179, 1181 (Miss. 1997) (incorrectly holding that the notice requirements are jurisdictional; correctly holding that such requirements are not simply "directive"), *overruled on other grounds by* ***Carr v. Town of Shubuta***, 733 So. 2d 261, 263 (Miss. 1999). Instead, the pre-suit notice requirements of the MTCA are akin to federal statutory notice requirements in employment discrimination suits. For instance, under the Age Discrimination in Employment Act, "before an aggrieved party can commence a civil action on an age discrimination claim he must file a charge with [the] EEOC 'within 180 days after the alleged unlawful practice occurred.'" ***Pruet Prod. Co. v. Ayles***, 784 F. 2d 1275, 1279 (5th Cir. 1986) (quoting 29 U.S.C. § 626(d)(1)). *See also* ***Yee v. Baldwin***, 2009 WL 1361527, at *2 (5th Cir. May 15, 2009) ("'[f]ailure to notify the EEO counselor in [a] timely fashion may bar' the employee's claim"). In ***Zipes v. Trans World Airlines, Inc.***, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d

---

[10]*See* Majority Opinion at ¶ 2.

[11]*See* Miss. Code Ann. § 15-1-69.

234 (1982), the United States Supreme Court determined that "filing a timely charge of discrimination with the EEOC is *not* a *jurisdictional prerequisite* to suit in federal court, but a *requirement* that, like a statute of limitations, is *subject to waiver, estoppel, and equitable tolling*." ***Zipes***, 455 U.S. at 393 (emphasis added). In ***Ayles***, the Fifth Circuit cited ***Zipes*** in finding that "this timely filing of a charge is *not* a *jurisdictional requirement* in the sense that failure to do so deprives the district court of subject matter jurisdiction, but is akin to a limitations statute which a plaintiff must satisfy as *a condition precedent to filing suit*." ***Ayles***, 784 F.2d at 1279 (citing ***Zipes***, 455 U.S. at 393) (emphasis added). *See also* ***Yee***, 2009 WL 1361527, at *2 ("[t]he exhaustion requirement is not jurisdictional, however, and is subject to the traditional equitable defenses of waiver, estoppel, and equitable tolling").

¶102. Similarly, pre-suit notice requirements could be compared to standing disputes. Standing, like satisfaction of the pre-suit notice requirements, "is to be determined as of the commencement of suit . . . ." ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 571 n.5, 112 S. Ct. 2130, 2142, 119 L. Ed. 2d 351, 371 (1992). In ***Delta Health Group, Inc. v. Estate of Pope ex rel. Payne***, 995 So. 2d 123 (Miss. 2008), this Court determined that "[t]he Legislature failed to confer standing on a great-nephew. . . . This Court is without authority to . . . empowe[r] him with a legal right to commence suit." *Id*. at 126. Similarly, this Court is without authority to empower Price with the right to commence suit. "Were this Court to allow such a scenario, any person could commence an action, toll the statute of limitations, [and] . . . keep the courthouse door open . . . ." *Id*.

62

¶103. Why is the Majority's reliance on *Mai* misplaced? The issue addressed in *Mai* was "whether failure to serve a defendant within 120 days as required by Rule 4(h) of the Mississippi Rules of Civil Procedure is a 'matter of form' as contemplated by Miss. Code Ann. § 15-1-69." *Mai*, 891 So. 2d at 222. Unlike the pre-suit notice requirements of Mississippi Code Sections 11-46-11(1) and 15-1-36(15), "clearly within the purview of the Legislature," *Wimley*, 991 So. 2d at 139, the failure to serve is a subject clearly within the realm of "this Court's rule-making responsibility." *Id*. As such, the pre-suit notice requirements do not "abrogat[e] the Mississippi Rules of Civil Procedure . . . by invalidating complaints that were properly filed and served." (Majority Opinion at ¶ 29). Rather, our precedent dictates that the failure to abide by such pre-suit notice requirements forecloses the possibility of a "properly filed," legally effective complaint. As this complaint "is of no legal effect[,]" according to the prior holdings of this Court, *Thomas*, 999 So. 2d at 846, I am at a loss as to why the statute of limitations would be tolled.[12]

¶104. To hold otherwise nullifies the legislatively-enacted, pre-suit notice requirements and repudiates the prior holdings of this very Court. The ruling grants litigants license to spurn legislative directives, as was done in this case.[13] Decisions such as this reward those who

---

[12]While "*equitable* tolling" could be permissible, *see Zipes*, 455 U.S. at 393 (emphasis added), it is clearly not implicated in the case *sub judice*. *See* footnote 7 *infra*.

[13]Price's brief provides that the decision to file the complaint on August 31, 2004, one day after sending notice of claim letters, "was not a simple mistake but rather the result of a strategic decision . . . ." In making that decision, Price does not dispute that Sections 11-46-11(1) and 15-1-36(15) "are clear in their meaning and not ambiguous . . . ."

63

intentionally fail to follow statutorily-prescribed conduct and likely will lead to further erosion of the legislation, such as application of Mississippi Code Section 15-1-69 to complaints filed without proper notice.

¶105. "While the right under our state and federal constitutions to access to our courts is a matter beyond debate, this right is coupled with responsibility, including the responsibility to comply with legislative enactments, rules, and judicial decisions." *Arceo*, 949 So. 2d at 697. Today's decision acts to "render meaningless any rule or statute setting time limitations on litigants." *Id*. Nullification of the statutory notice requirements, absent constitutional infirmity, is a decision for the Legislature alone.